### A97A2102. AUTREY v. UAP/GA AG CHEM, INC.
(497 SE2d 402)

RUFFIN, Judge.

UAP/GA AG CHEM, Inc. ("UAP/GA") sued Walter Autrey, Jr. to enforce a guaranty agreement executed by Autrey. The trial court denied Autrey's motion to dismiss the action based on lack of personal jurisdiction and granted UAP/GA's motion for summary judgment. Autrey appeals, and we affirm.

1. The trial court properly granted summary judgment to UAP/GA. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not

affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in a light most favorable to Autrey, the nonmoving party, the evidence shows that since 1984 he has been a shareholder and the president of Hamilton Turpentine Company ("Hamilton"). Hamilton is a Florida corporation which, until 1996 operated a commercial vegetable growing business. In 1988, Hamilton established an account to purchase agricultural products from UAP/GA on credit, and from that time until 1994 UAP/GA was Hamilton's largest supplier of agricultural products. In 1994 a dispute arose between Hamilton and UAP/GA. At the time, Hamilton owed UAP/GA $665,360 on the open account, but apparently claimed it was due a set-off against a portion of the balance because of crop damage allegedly caused by defective fertilizer Hamilton purchased through UAP/GA.

In early July 1995, Autrey went to the offices of UAP/GA in Albany, Georgia to discuss Hamilton's delinquent account with UAP/GA. According to Autrey, representatives of UAP/GA agreed that if Hamilton executed a promissory note for the delinquent principal and interest and Autrey guaranteed the note, UAP/GA would assist Hamilton in settling its claim for crop damage against the manufacturer of the allegedly defective fertilizer. Accordingly, on July 21, 1995, Autrey met with an UAP/GA representative in Cecil, Georgia, where he executed a $877,529.94 promissory note on behalf of Hamilton and a personal guaranty for the debt. When Hamilton failed to satisfy the note by its October 1, 1995 due date, UAP/GA demanded payment from Autrey under the guaranty. UAP/GA filed the instant complaint in Superior Court of Lowndes County after Autrey also failed to satisfy the note.

(a) Autrey asserts that the trial court erred in granting summary judgment to UAP/GA because an issue of fact exists concerning whether he was induced by fraud to execute the guaranty. Autrey contends in his appellate brief that the only reason he executed the guaranty was because representatives of UAP/GA agreed that in exchange for the promise "it would arrange payment" for the crop damage Hamilton suffered due to the allegedly defective fertilizer.

In support of his argument, Autrey cites his own deposition testimony where he stated that UAP/GA representatives told him "that they already had talked to the insurance company on the fertilizer dispute and they were ready to get that settled and they would pay a

claim and all that sort of stuff." Autrey added that UAP/GA "pretty much assured [him] that we could sit down and meet and show them what we had and they would pay a product liability claim." This same testimony also shows, however, that the parties' alleged agreement contained no specific promises. Autrey acknowledged that UAP/GA representatives never told him that they had a "settlement figure or settlement agreement in hand[,]" only that "they would help [him] try and get it settled[.]" Autrey further conceded that it was never established whether the purported settlement agreement involved UAP/GA's insurance company, the fertilizer manufacturer's insurance company or both insurance companies. Finally, Autrey's testimony clearly shows that the parties never agreed to the amount of the alleged settlement.

We agree with UAP/GA that the alleged agreement was simply too vague to establish fraud. "Although fraud can be predicated on a misrepresentation as to a future event where the [promisor] knows that the future event will not take place, fraud cannot be predicated on a promise which is unenforceable at the time it is made." (Citations and punctuation omitted.) *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 403 (2) (422 SE2d 277) (1992). The parties must agree on all essential terms for a contract to be enforceable. See *Poulos v. Home Fed. Sav. &c. Assn.*, 192 Ga. App. 501, 503 (2) (385 SE2d 135) (1989). "If there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement, even though the negotiations evidenced a complete willingness, or even an announced determination, to agree in the future upon such issues as might subsequently arise, it must still follow that a valid and binding contract was not made as of the earlier date. Unless all the terms and conditions are agreed on, and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect. An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." (Citations and punctuation omitted.) Id.

In this case, the evidence of record is clear that the alleged fraud was predicated on a promise which was unenforceable at the time it was made. As stated above, Autrey's own deposition testimony shows that UAP/GA representatives never told him that they had a "settlement figure or settlement agreement in hand[,]" only that "they would help [him] try and get it settled[.]" There was no agreement as to the amount of the purported settlement or as to which insurance company would pay the settlement. Construing the evidence in a light most favorable to Autrey, it shows only that UAP/GA agreed that it would settle the dispute under terms and conditions to be agreed on in the future. Such an announced determination, without agreement on the essential terms of the settlement, was unenforceable and therefore insufficient to form the basis of Autrey's fraud

defense. See id.; *Bridges*, supra. Accordingly, the trial court did not err in granting UAP/GA summary judgment on this ground.

(b) The trial court also correctly rejected Autrey's claim that the guaranty lacked consideration. The record shows that the guaranty agreement was under seal and recited that it was "[i]n consideration of the sum of Five Dollars ($5.00) and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by [Autrey]. . . ." "A contract under seal raises a prima facie presumption of consideration, which is rebuttable. [Cit.] Thus, although a contract under seal imports consideration [cit.], the defense of failure of consideration can be asserted. [Cit.] However, any nominal consideration recited in sealed instruments is sufficient as a matter of law. [Cits.]" *Jolles v. Wittenberg*, 148 Ga. App. 805, 807 (2) (253 SE2d 203) (1979). It follows that the consideration recited in the sealed guaranty executed by Autrey was sufficient as a matter of law. See id.

2. The trial court did not err in denying Autrey's motion to dismiss based on lack of personal jurisdiction. " 'Our precedents establish that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. [Cits.]' " *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539 (428 SE2d 435) (1993). "[I]f a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard. [Cits.]" Id. at 540.

There is abundant evidence in this case establishing the trial court's personal jurisdiction over Autrey. That evidence shows that although Autrey claims a Florida residence has been his domicile since 1993, he formerly lived and worked in Georgia. In fact, Autrey was mayor of Valdosta, Georgia from 1986 to 1988. He owned a securities business there from 1987 to 1992 and still owns a house in Valdosta where he lives 25 percent of the time. In addition, Autrey currently owns 22 percent of the Valdosta Plant Company located in Cecil, Georgia, and has outstanding loans with a Georgia bank.

In 1988, Autrey began doing business with UAP/GA which is located in Albany, Georgia. As stated above, from that time until 1994, UAP/GA was Hamilton's largest supplier of agricultural products. In early July 1995, Autrey went to the offices of UAP/GA in Albany, Georgia to discuss Hamilton's delinquent account with UAP/GA. It was there that the parties negotiated and agreed that Hamilton would sign a promissory note and Autrey would execute the guaranty. Three weeks later UAP/GA representatives met with Autrey at the Valdosta Plant Company he owns in Cecil, Georgia, where he executed both the note and the guaranty. Finally, Autrey was personally served with process in this action at his residence in Valdosta, Georgia.

Pretermitting consideration of Autrey's other contacts with Georgia, evidence showing that he negotiated and executed the personal guaranty in Georgia "is a sufficient minimum contact to empower a court of this state to exercise personal jurisdiction over [him]. [Cits.]" *Outlaw v. John R. Bartlett Foundation*, 166 Ga. App. 381, 382 (1) (304 SE2d 507) (1983). Similarly, evidence that Autrey was personally served with process at his Georgia residence is alone sufficient to provide a basis for the trial court's personal jurisdiction over him. See *Humphrey v. Langford*, 246 Ga. 732 (273 SE2d 22) (1981). Thus, the trial court properly denied Autrey's motion to dismiss for lack of personal jurisdiction.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 25, 1998.

*Langdale, Vallotton, Linahan, Threlkeld & Wetherington, William P. Langdale, Jr., William P. Langdale III*, for appellant.

*Gardner, Willis, Sweat & Goldsmith, Deena L. Plaire*, for appellee.