A06A2052. MIAMI HEIGHTS LT, LLC v. HOME DEPOT U.S.A., INC.
(643 SE2d 1)

RUFFIN, Judge.

Home Depot U.S.A., Inc. entered into a letter of intent with Miami Heights LT, LLC[1] regarding the sale of property owned by Home Depot. In the letter of intent, the parties agreed to negotiate and execute a formal purchase and sale agreement, closing on the property by a date certain. The parties failed to reach an agreement,

---

[19] 250 Ga. App. 152 (550 SE2d 707) (2001).

[20] Id. at 155-156 (1).

[1] Miami Land Trust, LLC thereafter assigned its rights and obligations under the Letter of Intent to Miami Heights LT, LLC. Hereinafter, "Miami Heights" refers to both Miami Land Trust, LLC and Miami Heights LT, LLC.

and no closing occurred. Miami Heights filed suit against Home Depot, seeking specific performance and damages for breach of contract and fraudulent misrepresentation. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of Home Depot. Miami Heights appeals, asserting four enumerations of error. Because we find that the letter of intent was unenforceable, we affirm.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in a light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.[2] Construing the evidence most favorably to Miami Heights, the record shows that Miami Heights drafted the initial letter of intent, which was amended and countersigned by Home Depot on or about March 23, 2005.[3] The letter of intent set forth the property description and the purchase price, and provided that Miami Heights would allow Home Depot to lease a portion of the property. Relevant portions of the letter of intent provided that:

> 4. ***Execution of Formal Agreement***: Within . . . (3) days of mutual execution of this Letter of Intent, Seller will cause a formal Purchase and Sale Agreement (the "Agreement") to be drafted for Seller's review and approval. . . . *Buyer and Seller shall have ten (10) days from delivery of the Agreement to negotiate, execute, and deliver the Agreement. The parties agree to negotiate in good faith to finalize the Agreement.* If the parties fail in good faith to execute the Agreement, this Letter of Intent and all rights and obligations of the parties hereunder shall cease, terminate and be null and void and the Earnest Money shall be refunded to Buyer. . . .

> 6. ***Closing***: The Closing shall occur on or before April 28, 2005. . . .

> 10. ***Conditions of Closing***: The Closing contemplated by the Agreement shall be subject to Purchaser's verification that:

> . . . (e) Purchaser obtains an executed lease for the property from Seller.

---

[2] See *Hamblin v. City of Albany*, 272 Ga. App. 246 (612 SE2d 69) (2005).

[3] Miami Heights accepted Home Depot's modifications to the letter.

*This Letter of Intent shall be a binding agreement until the parties have executed the Agreement described above which has been approved by their respective counsel.* The Agreement will contain all other essential terms of an agreed upon transaction. . . .

11. **Sale/Leaseback**: Seller shall lease the property from Buyer for a period of twelve (12) months beginning from the date of Closing (the "Lease"). The Lease shall be absolute net to Buyer with an annual rental rate of 6% of the Purchase Price for the first 12 months and 8% for any additional months thereafter. . . .

13. **Deed/Use Restrictions**: Buyer shall consent to accept Seller's temporary use restrictions as expressed in Seller's contract. . . . In addition, *Buyer shall consent to a Deed Restriction to be recorded on the Property restricting the sale of home improvement products.*[4]

On March 24, 2005, Home Depot submitted a proposed formal purchase and sale agreement to Miami Heights which included a restrictive covenant that prohibited certain businesses, including skating rinks, movie theaters, non-fast food restaurants, bowling alleys, and health spas. The restrictive covenant proposed by Home Depot also prohibited any business that sold or displayed certain items including tools, paint, wallpaper, window treatments, rugs, Christmas trees, or plants, unless the items were incidental to the retailer. During negotiations, the parties disagreed about certain issues, including the meaning and scope of the term "home improvement products," the terms of the lease, and the addition of a repurchase provision. The parties ultimately failed to agree upon and execute a final purchase and sale agreement.

Miami Heights filed suit against Home Depot on April 25, 2005 — 12 days after the letter of intent terminated — seeking specific performance, damages for breach of contract and fraudulent misrepresentation, punitive damages, and attorney fees and costs.[5] On May 24, 2005, Home Depot sent a letter to counsel for Miami Heights, offering to sell the property using only the limited deed restriction language contained in the letter of intent, with a closing deadline of June 29, 2005. In response, Miami Heights proposed a purchase and

---

[4] (Emphasis supplied.)

[5] Miami Heights contends that Home Depot breached the letter of intent by failing to perform its contractual obligation to negotiate in good faith.

sale agreement with specifics regarding the lease terms and other provisions, and a closing date 60 days after execution of the agreement. Home Depot insisted on the June 29, 2005 closing date, and Miami Heights rejected the proposal, contending that it would not have sufficient time to conduct adequate due diligence and coordinate with the equity and investment community. According to Home Depot, it thus tendered the property to Miami Heights on June 29, 2005, but Miami Heights failed to complete the purchase as it had not obtained the necessary financing. Miami Heights insists that it rejected the purported tender because it was inadequate and inconsistent with the letter of intent.

On November 23, 2005, Miami Heights filed an amended complaint seeking specific performance of the letter of intent subject to "those restrictive covenants determined by the court after hearing the evidence, including the testimony of experts." The amended complaint also requested that the trial court restrict the sale of "home improvement products" from a "home improvement products retailer" only, and specifically permit "the sale of any home improvement item in the inventory of a 'retailer who sells home improvement products.' "

The parties filed cross-motions for summary judgment, and the trial court granted Home Depot's motion for summary judgment and denied Miami Heights's motion. In its order, the trial court determined that the letter of intent was expressly contingent upon "essential terms to be negotiated in the future," including what covenants would be included in the purchase and sale agreement. Thus, the trial court concluded that the letter of intent was unenforceable because the parties contemplated that it would be incomplete and would require a subsequent binding agreement.

1. In its first enumeration of error, Miami Heights asserts that the trial court erred in concluding that the letter of intent was unenforceable. We disagree.

In Georgia, a contract requires agreement on all essential terms and

> the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable agreement to agree.[6]

---

[6] (Punctuation and footnote omitted.) *Kreimer v. Kreimer,* 274 Ga. 359, 363 (2) (552 SE2d 826) (2001); see also *Poulos v. Home Fed. S & L Assn.,* 192 Ga. App. 501, 503 (2) (385 SE2d 135) (1989) ("An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto.") (punctuation omitted); *Hartrampf v. C & S Realty Investors,*

But, "a deferral of agreement on a nonessential term does not invalidate an otherwise valid contract."[7] A seller cannot escape an agreement to purchase and sell real estate when a more lucrative opportunity arises simply because the agreement contains contingencies, such as the securing of financing.[8]

It is virtually undisputed that the deed restriction was an essential term of the agreement. Thus, we must consider whether the meaning of this term was sufficiently established such that the letter of intent established a binding agreement, or whether it was so ambiguous that it rendered the letter of intent merely an unenforceable "agreement to agree." In its supplemental brief, Miami Heights asserts that the letter of intent "unambiguously calls for a restriction on the sale of 'home improvement products.'" We might find this assertion more persuasive had Miami Heights not filed an amended complaint expressly seeking clarification from the trial court regarding the meaning of this term.[9] As noted by Home Depot, " '[c]ourts are not at liberty to revise contracts while professing to construe them.' "[10] Although we find this to be a close case, the record ultimately shows that there was never a meeting of the minds as to at least one essential element of the contract. Under these circumstances, the agreement cannot be enforced by legal fiat.

We are mindful that "the policy of the law is against the destruction of contracts on the ground of uncertainty if it is possible in the light of the circumstances under which the contract was made to determine the reasonable intention of the parties."[11] Further, we recognize that the deed restriction initially proposed by Home Depot — that included restrictions on businesses that had little or no relation to home improvement produce retailers — arguably supports Miami Heights's contention that Home Depot attempted to avoid its obligations under the letter of intent. However, it was Miami Heights who drafted the letter and failed to specifically define the "home improvement product" deed restriction, and such ambiguities are

---

157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981) ("Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect.") (punctuation omitted).

[7] *Goobich v. Waters*, 283 Ga. App. 53, 56 (1) (640 SE2d 606) (2006).

[8] See *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980); *Goobich*, supra.

[9] Further, in its cross-motion for summary judgment, Miami Heights asked the trial court to order a lease that specified terms that were not contained in the letter of intent, including the timing and number of payments and the inclusion of ad valorem taxes and insurance in the monthly payments.

[10] Quoting from *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (1) (231 SE2d 565) (1976).

[11] (Punctuation omitted.) *ISS Intl. Svc. Systems v. Widmer*, 264 Ga. App. 55, 59-60 (1) (589 SE2d 820) (2003).

construed against the drafter.[12] In any case, "even when viewing the facts in a light most favorable to [Miami Heights], it is clear that [the] issue [of the deed restriction] was not resolved when the parties signed the letter of intent. Negotiations on this issue continued . . . after the signing of the letter of intent."[13] Thus, we conclude that the letter of intent is unenforceable.[14] It follows that the trial court did not err in granting summary judgment to Home Depot.

2. In light of our holding in Division 1, we need not address Miami Heights's remaining enumerations of error.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 28, 2007.

*Davis, Matthews & Quigley, Ron L. Quigley, Rogers & Hardin, Robert B. Remar, Thomas J. Mew IV*, for appellant.

*Parker, Hudson, Rainer & Dobbs, William J. Holley II*, for appellee.

---

[12] See OCGA § 13-2-2 (5); *Smith v. Persichetti*, 245 Ga. App. 357, 358 (537 SE2d 441) (2000).

[13] *OfficeMax v. Sapp*, 132 FSupp.2d 1079, 1083-1084 (II) (B) (M.D. Ga. 2001) (letter of intent for the lease of commercial property that fails to memorialize the parties' agreement regarding essential terms, including a deed restriction, is unenforceable).

[14] See id.; see also *Beaulieu of America v. Coronet Indus.*, 173 Ga. App. 556, 558-559 (327 SE2d 508) (1985) (letter of intent for purchase of property which specified that contemplated sale was contingent upon future agreement by parties is unenforceable); *Hartrampf*, supra.