**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 1, 2019**

# In the Court of Appeals of Georgia

A18A1602. LEWIS v. IKNER.

MILLER, Presiding Judge.

Carolyn Ann Lewis, the plaintiff in this action to collect on a promissory note, appeals from the trial court's grant of partial summary judgment to her son, Paul Ikner, based on its finding that the note failed for want of consideration. We affirm because we agree with this finding.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *L.D.F. Family Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 361 (756 SE2d 593) (2014).

So viewed, the evidence shows that in April 2012, Lewis and her husband gave Ikner approximately $80,000 to use as a down payment on a house, with Lewis personally giving $27,457.39. For purposes of the mortgage and taxes, Lewis and her husband each signed gift letters indicating that they were making a gift. The gift letters stated that there were no terms or conditions associated with the gift, and the gift was "given freely with the understanding that [Ikner] has no obligation to pay it back either in money, in future services or otherwise."[1] Ikner also signed the letters. Lewis and her husband filed gift tax returns with the IRS and paid taxes on the money given. Lewis also contributed approximately $6,600 toward termite repairs around the time Ikner closed on the house in May 2012.

Lewis and Ikner both expected that Lewis and her husband would live in the house with Ikner following the purchase. Lewis expected that she would be added to the mortgage and the deed, but when the mortgage company refused to allow her to be added to the mortgage, she insisted that her name be added to the deed after the

---

[1] While being deposed, Lewis stated that the statements in the letters were "a little bit false."

2

closing. After the closing, Lewis moved in with Ikner, but her husband did not, and she and her husband eventually separated. Due to a clause in the mortgage documents, Ikner was not able to add Lewis to the deed without accelerating the debt and making the mortgage due in full immediately.

On December 17, 2013, about 19 months after the closing and 20 months after the gift letters, Ikner signed a promissory note in which he promised to pay Lewis $100,000 "payable on demand." The note stated:

> This promissory note is supported by good and valuable consideration in that my mother, extended to me, sufficient money, to make a handsome down payment, and certain alterations to my home place . . . . Additionally, simultaneously, I have prepared a Last Will and Testament, which shall make reference to this obligation, and is proof certain that in the event of my death, prior to the death of my mother, I have a true obligation to my mother on and above any obligation to my children, or any other person . . . . As referenced in the note, Ikner also signed a will leaving Lewis $100,000 if the debt remained outstanding upon his death. Shortly thereafter, Ikner changed the locks on the doors and did not allow Lewis to return to the house.

In 2016, Lewis sent Ikner a demand letter, seeking payment on the note within 30 days as well as the return of her personal property still in the house. In response to the list of items Lewis sought, Ikner handwrote the following note: "I'm working

to get the house ready for sale. I would like to work to get the money as soon as I can. If I can have a extension on this matter til Sept. 1[,] 2017 . . . If I cann't [sic] sale by this time. I will take whatever loans out to pay what is owed." When Ikner did not pay Lewis, Lewis filed the underlying suit against him to collect on the note.[2]

Ikner testified in his deposition that the money Lewis gave him for the down payment and the termite repairs was a gift, and while he did not believe he had any obligation to repay Lewis, he signed the note intending she would get money from the sale of the house from his estate after he died.

Lewis testified in her deposition that the money she put toward the house was an "investment," allowing her to live with Ikner and be named on the mortgage and the deed, and she and Ikner "understood" his obligations under this arrangement or agreement from the time she expended the money. Lewis claimed that Ikner signed the promissory note because she and Ikner had "an understanding all along" that the money she put toward the house belonged to her. However, as illustrated by the

---

[2] In addition to her complaint on the note, Lewis raised claims of trover and conversion, based on Thompson's alleged refusal to allow her to return to the house and remove personal property. Those claims remain pending. Lewis's direct appeal from the trial court's grant of partial summary judgment to Ikner is proper, however, because "[a]n order granting summary judgment on any issue . . . shall be subject to review by appeal." OCGA § 9-11-56 (h).

following exchange, Lewis admitted that she and Ikner never discussed this understanding and the money was "considered a gift":

> **Q:** . . . Is it your testimony today that there was, in fact, a term and condition connected to the gift and that was that [Ikner] put your name on the deed?
>
> **A:** I'm saying that all the money that has been transferred to him probably everything that I've ever given him has been considered a gift. He has never even mentioned the fact, and neither have I, that he owed me. Never. I was so concerned that the promissory note was written because I was afraid I would be out of a house with him dead and that is why. . . . I was not thinking you owe me because he's my son. I loved him.
>
> **Q:** . . . [I]t was never discussed prior to you signing the gift letter and gifting the money to him that he owed the money back to you or he owed you to put your name on [the deed]?
>
> **A:** We never discussed this. We never discussed it. . . .
>
> **Q:** . . . It was then never discussed between you and your son that you were giving him this money and in exchange he owes you the obligation –
>
> **A:** He knew the obligation. He's not dumb.

. . .

**Q:** And so you only gave him the money on the condition that he put your name on the deed?

**A:** Sir, there was no conditions discussed. . . . It was understood. We never s[a]t down at a table and said, You owe me this. But, yes, he understood because he was the one that talked me into signing the – to giving the money in closing. I didn't have to hand them that money.

**Q:** Well, you say it was understood. So that's really my question. When you gave – when you told [Ikner] I'm going to give you this money –

**A:** I didn't have to tell him. I gave him that money, sir.

**Q:** . . . Did you tell [Ikner], I am giving you this money on the condition or on the promise that you then put my name on the deed? Did you ever tell him that? Or was it just understood?

**A:** It was understand [sic] between the two. He knew. . . .

**Q:** And so it was never expressly stated then because you didn't feel like it needed to be expressly stated?

**A:** We may have talked about it. I don't remember.

6

**Q:** You don't remember whether you all expressly talked about a promise that he pay you back by putting your name –

**A:** I don't know if we ever talked about a promise. . . .

Ikner moved for partial summary judgment on Lewis's complaint on the note, arguing that the note failed for want of consideration because the purported monetary consideration recited in the note was past consideration and the money had been a gift. Lewis filed a cross-motion for partial summary judgment. Following a hearing, the trial court granted Ikner's motion and denied Lewis's motion, finding that the note failed for want of consideration because the purported monetary consideration recited in the note was both past consideration and a gift. Lewis now appeals, arguing that the note is supported by both valuable and good consideration. We disagree, and conclude that the trial court correctly granted partial summary judgment to Ikner because the note fails for want of consideration.

"A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor." (Citation omitted.) *L.D.F. Family Farm, Inc.*, supra, 326 Ga. App. at 364 (1).

In an action on a promissory note, a claimant may establish a prima facie right to judgment as a matter of law by producing the promissory note and showing that it was executed. On a motion for summary judgment, the burden then shifts to the obligor to establish an affirmative defense to the claim, such as the lack of consideration.

(Citations and punctuation omitted.) *Han v. Han*, 295 Ga. App. 1, 3 (2) (670 SE2d 842) (2008). See also OCGA § 13-3-40 (a) ("A consideration is essential to a contract which the law will enforce.").

Considerations are distinguished into "good" and "valuable." A good consideration is such as is founded on natural duty and affection or on a strong moral obligation. A valuable consideration is founded on money or something convertible into money or having a value in money, except marriage, which is a valuable consideration.

OCGA § 13-3-41.

1. Lewis argues that the promissory note is supported by valuable consideration for two reasons. First, she claims that she and Ikner understood that she only expended money for the down payment and the termite repairs because she would be living at the house and/or be named on the deed, and, therefore, the money was not a gift and the note simply memorialized the parties' prior agreement. Second, she

8

claims that Ikner signed the note in exchange for her agreement to rescind her request to be named on the deed.

(a) The money for the down payment and the termite repairs does not constitute valuable consideration to support the note. Regarding the down payment money, in *Long v. Beach*, 242 Ga. App. 448 (529 SE2d 901) (2000), a mother transferred money to her son to use as a down payment on a house, and when the house was purchased the mother and son memorialized the transfer by signing a gift letter which stated the son was under no obligation to repay the money. The mother subsequently filed suit against her son, alleging she and her son had an oral understanding that he would repay the money. Id. This Court held that (1) in light of the gift letter, any prior or contemporaneous oral agreement that the money was a loan rather than a gift would not be admissible to contradict the letter under the parol evidence rule; and (2) any agreement to repay entered into after the letter would not be enforceable due to the absence of other consideration in support of such an agreement. Id. at 449. Here, the transfer of the down payment money was memorialized in the gift letter, which both Lewis and Ikner signed, and which stated that Ikner was under no obligation to repay Lewis and that the gift was subject to no terms or conditions. Therefore, like the plaintiff in *Long*, Lewis may not rely on any prior or contemporaneous oral agreement

9

that the down payment money was subject to certain conditions. Further, any subsequent agreement for Ikner to repay Lewis would require its own consideration, but as discussed below, there is none.

The termite repairs money also cannot be deemed valuable consideration to support the note because it was past consideration. Lewis paid this money in May 2012, and Ikner did not execute the note until December 2013. "[I]t is well-settled that past consideration will not support a subsequent promise." (Citations and punctuation omitted.) *Lee v. Choi*, 323 Ga. App. 370, 374 (1) (754 SE2d 371) (2013). Lewis's claim that the note simply memorialized the parties' prior agreement, under which Lewis would put money toward the house and Ikner would allow her to live there and/or name her on the deed, is not supported by any evidence. Ikner testified that the money Lewis put toward the house was a gift and not to be re-paid. While Lewis testified that the parties had an implicit understanding that she was to receive something in exchange for the money, she admitted that Ikner made no promises to her at the time the money was paid, that the money was "considered a gift," that she was not thinking he owed her, and that neither party had mentioned the fact that he owed her. See *Whitmire v. Watkins*, 245 Ga. 713, 714 (267 SE2d 6) (1980) (where the plaintiff had fully performed the services that he claimed constituted consideration

10

for the defendants' promise to devise him land before the promise was made, the agreement was based on past consideration). Compare *Boot v. Beelen*, 224 Ga. App. 384, 385-386 (1) (480 SE2d 267) (1997) (consideration was not past consideration where the defendant told the plaintiff at the time the money was spent that he would repay her, and this promise was later memorialized in writing).

"A contract is unenforceable where there is no meeting of the minds between the parties regarding a material element thereof. And all essential elements, including the element of consideration, must be certain." (Citation and punctuation omitted.) *STC Two, LLC v. Shulman-Weiner*, 325 Ga. App. 245, 249 (1) (750 SE2d 730) (2013). See also OCGA § 13-3-42 (a) ("To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract."); *Alexander v. Watson*, 271 Ga. App. 816, 819 (2) (611 SE2d 110) (2005) ("Georgia contract law requires a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon.") (citation and punctuation omitted.) Here, Lewis extended the termite repair money 19 months before Ikner executed the promissory note, and there is no evidence to support Lewis's claim that the parties

had a meeting of the minds at the time she extended the money. Accordingly, this money constituted past consideration.

(b) Lewis's purported agreement to rescind her request to be named on the deed does not constitute valuable consideration to support the note. Lewis testified that it was merely her "supposition" that Ikner agreed with her attorney to sign the note instead of naming her on the deed, and "a motion for summary judgment cannot be denied based upon speculation and conjecture." (Citation omitted.) *Willingham Loan & Realty Co. v. Washington*, 311 Ga. App. 535, 536 (716 SE2d 585) (2011). Further, the note specifically purports to establish that the consideration is the money Lewis gave Ikner for the down payment and the repairs. "It is well established that a promissory note may not be modified by the imposition of conditions not apparent on its face. The note being an unconditional promise, the contract is complete as written. Parol evidence may not be used to impose conditions which are not apparent from the face of the note." *L.D.F. Family Farm, Inc.*, supra, 326 Ga. App. at 364 (1). See also *Lee*, supra, 323 Ga. App. at 372-375 (1) (where an agreement provided that the consideration for payment was work the plaintiff previously did for the defendant, the plaintiff's agreement to give up the right to other lawsuits or any prior action could

12

not constitute consideration). Therefore, any consideration for the note is limited to the purported monetary consideration recited in the note.

2. Lewis also argues that the note is supported by good consideration, because when she expended money on the house the parties intended for it to be her residence, and Ikner has a natural duty and moral obligation to provide her, his elderly mother, a residence at the house or repay her the money to help her buy a house of her own. We disagree, as the note is not supported by good consideration.

While the note stated that it was "supported by a good and valuable consideration," it then specified that this consideration consisted of the money Lewis extended to Ikner for the down payment and repairs. In *Head v. Head*, 232 Ga. 373, 375 (1) (207 SE2d 15) (1974), the Supreme Court of Georgia held that where the consideration recited in a deed was monetary, parol evidence was not admissible to show additional consideration. As the note here specifies a monetary or valuable consideration, Lewis may not rely on a good consideration that is founded on natural duty and affection or on a strong moral obligation. See *Lee*, supra, 323 Ga. App. at 374 (1). See also *Dodson v. Phagan*, 227 Ga. 480, 480-482 (181 SE2d 366) (1971) (where a deed recited that the consideration was natural love and affection, parol evidence was not admissible to show that the consideration was actually the grantee's

promise to pay expenses of the grantor and his wife). Compare *Smith v. Thigpen*, 298 Ga. App. 572, 573 (680 SE2d 604) (2009) (parol evidence was admissible to resolve an ambiguity as to the specific nature of consideration supporting a promissory note given "for value received" without specifying the consideration).

3. Finally, Lewis's claim that Ikner is improperly attempting to vary the terms of the note by refusing to pay her the money until his death is unavailing, as the note fails entirely for want of consideration. See OCGA § 13-3-40 (a).

In conclusion, the trial court's grant of partial summary judgment to Ikner was proper. Therefore, we affirm.

*Judgment affirmed. Brown and Goss, JJ., concur.*